## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OREGON BREWING COMPANY,<br><br>                              Plaintiff,<br><br>v.<br><br>ROGUE APPAREL GROUP, INC.,<br><br>                              Defendant. | Civil Action No. _____ |

## COMPLAINT

Oregon Brewing Company ("OBC") files this Complaint against Rogue Apparel Group, Inc. ("Defendant"), and alleges as follows:

## INTRODUCTION

1.       This is an action for trademark infringement. OBC is one of the oldest breweries in the United States. For approximately 30 years, OBC has advertised and sold beer and apparel such as t-shirts, sweatshirts, hats and similar apparel bearing the trademark ROGUE throughout the United States. OBC owns a federal trademark registration for ROGUE for t-shirts, sweatshirts and hats.

2.       Defendant manufactures, advertises, distributes and sells non-leather apparel such as t-shirts, sweatshirts, hoodies, shorts and hats bearing ROGUE and ROGUE-formative marks, despite knowing that such conduct infringes OBC's well-known ROGUE mark.

## PARTIES

3.       OBC is an Oregon corporation with its primary place of business in Newport, Oregon.

4.      Defendant is Delaware corporation with its primary place of business in Vernon, California.

## JURISDICTION AND VENUE

5.      OBC's claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and New York law. The Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1338(a) and over the state claims under 28 U.S.C. §§ 1338(b) and 1367(a).

6.      The Court has personal jurisdiction over Defendant. Defendant has advertised, distributed and sold infringing ROGUE-branded apparel in retail stores in New York and on websites such as **rogue.us.com**, **theroguecollective.com, roguestatela.com** and **Amazon.com**, which are accessible to consumers located in New York. Consumers located in New York have purchased Defendant's infringing ROGUE-branded apparel.

7.      Defendant has transacted business in New York that is damaging OBC and was intended to damage OBC. (New York CPLR § 302(a).) For example, in or around July 2015, Defendant entered into a contract in New York with Excelled Sheepskin & Leather Coat Corporation ("Excelled"), a company headquartered in New York, to acquire joint ownership of certain ROGUE marks for apparel, which Excelled purported to own. Exhibit A attached hereto. In or around February 2017, Defendant entered into another contract with Excelled in New York whereby it acquired sole ownership of the ROGUE marks, which Excelled purported to own. Exhibit B attached hereto.

8.      Beginning as early as the spring of 2015, Defendant engaged in communications with Excelled (while Excelled was located in New York, New York) regarding the manufacturing, advertising, promotion, distribution and sale of infringing ROGUE-branded apparel, which was being sold in New York, among other places. On information and belief,

Defendant attended meetings with Excelled in New York to discuss the foregoing and to negotiate and finalize the July 2015 and the February 2017 contracts with Excelled relating to the ROGUE marks.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTS GIVING RISE TO OBC'S CLAIMS

### I.      OBC and Its ROGUE Marks

10.      OBC sells ROGUE-branded beer, spirits and apparel and other merchandise. For three decades, OBC has advertised and sold ROGUE-branded apparel throughout the United States, including in New York. In the mid-1990's, OBC registered the domains **rogue.com** and **rogueales.com**, and soon thereafter built an online store to advertise and sell ROGUE-branded apparel such as t-shirts, sweatshirts, and hats throughout the country.

11.      OBC owns United States Registration No. 3,365,653 for ROGUE for t-shirts, sweatshirts, and hats. OBC also owns common law marks for ROGUE for t-shirts, sweatshirts, hats and similar apparel as well as online retail store services featuring such apparel. OBC's federally registered and common law ROGUE marks are referred to herein as "OBC's ROGUE Marks."

12.      OBC's ROGUE Marks are inherently distinctive and strong. Immediately after commencing sales of ROGUE-branded apparel in the 1980's, OBC established rights to the ROGUE trademark for t-shirts, sweatshirts, and hats and similar apparel throughout the country.

### II.      The OBC-Excelled Litigation in the Southern District of New York

13.      In 2012, OBC and Excelled sued one another for trademark infringement over the mark ROGUE and ROGUE-formative marks in the United States District Court for the Southern

District of New York. Civil Action No. 12-cv-1416. In that action, OBC also sought cancellation of certain ROGUE and ROGUE-formative trademark registrations owned by Excelled based on, among other things, prior use coupled with a likelihood of confusion, abandonment and fraud on the United States Patent and Trademark Office ("USPTO").

14.     In July 2018, following district court proceedings, the Second Circuit issued a decision declaring that OBC owns nationwide rights to the ROGUE trademark for t-shirts, sweatshirts, and hats and similar categories of apparel. *See* Exhibit C, *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, Case No. 16-3602, Dkt. 96-1, 2018 U.S. App. LEXIS 20940 (2d Cir. July 27, 2018), attached hereto. In so doing, the Second Circuit found that OBC is the senior user of the ROGUE mark for clothing as to Excelled and that the law prohibits Excelled from usurping OBC's ROGUE mark. *Id.*at *10-12, 19. The Second Circuit also found "clear and convincing" evidence that Excelled defrauded the USPTO by hiding a settlement agreement between OBC and Excelled, which barred Excelled from applying to register and maintaining registrations for ROGUE and ROGUE-formative marks for goods other than jackets, coats and skirts. *Id.* at * 20-24. The Second Circuit reinstated OBC's claims, ordered the dismissal with prejudice of Excelled's claims and remanded the case for further proceedings. *Id.* at * 17-20, 24.

15.     The District Court has scheduled a case management hearing on January 15, 2019.

## III.     Defendant and Its Infringing ROGUE-Branded Apparel

16.     On or about July 23, 2015, Defendant acquired an undivided joint ownership interest in certain ROGUE marks purportedly owned by Excelled. Exhibit A. On or about February 21, 2017, Defendant acquired sole ownership of these marks from Excelled. Exhibit B.

Prior to Defendant's acquisition of the marks and at all times thereafter, Defendant had actual knowledge of the OBC/Excelled litigation in the Southern District of New York and that OBC owned superior rights to Excelled in the ROGUE marks.

17.     Beginning on or about July 23, 2015 – decades after OBC established nationwide rights to the mark ROGUE for t-shirts, sweatshirts and hats and similar apparel – Defendant began to manufacture, advertise, promote, distribute and sell non-leather, ROGUE-branded apparel such as t-shirts, hoodies, sweatshirts, shorts, and hats (and similar apparel), on **rogue.us.com**, **theroguecollective.com**, and **theroguestatela.com** and at retail stores.

18.     Defendant's manufacturing, advertising, promotion, distribution and sales of ROGUE-branded apparel which is not made in whole or in substantial part of leather is likely to cause confusion, deception and mistake with OBC's ROGUE-branded clothing.

19.     Defendant is trading off the goodwill and reputation of OBC's ROGUE Marks and is intentionally causing a likelihood of confusion in the marketplace.

## <u>COUNT I</u>

### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1114)

20.     OBC re-alleges and incorporates the allegations in Paragraphs 1-19 above as though set forth herein.

21.     OBC owns Registration No. 3,365,653 for ROGUE for t-shirts, sweatshirts, and hats.

22.     Defendant's unauthorized use of OBC's ROGUE Marks in connection with the manufacturing, advertising, promotion, distribution and sale of non-leather apparel, such as t-shirts, hoodies, sweatshirts, shorts and hats (and similar apparel) is likely to cause confusion,

mistake or deception as to source, origin, affiliation, connection or association of Defendant's goods and services.

23.     Defendant's unauthorized use of OBC's ROGUE Marks constitutes trademark infringement, unfair competition and false designation of origin in violation of 15 U.S.C. § 1114 of the Lanham Act.

24.     Defendant's unauthorized use of OBC's ROGUE Marks has caused OBC to lose control over the goodwill and reputation associated with those marks.

25.     Defendant's wrongful conduct has unjustly enriched Defendant and caused actual damages and irreparable injury to OBC.

26.     Unless the Court enjoins Defendant from its unlawful conduct, OBC will continue to suffer irreparable injury, for which there is no adequate remedy at law.

<u>**COUNT II**</u>

**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1125)**

27.     OBC re-alleges and incorporates the allegations in Paragraphs 1-26 above as though set forth herein.

28.     OBC owns federally registered and common law marks for ROGUE for t-shirts, sweatshirts and hats as well as similar clothing items, and online retail store services featuring such items of clothing.

29.     Defendant's unauthorized use of OBC's ROGUE Marks in connection with the manufacturing, advertising, promotion, distribution and sale of non-leather apparel such as t-shirts, hoodies, sweatshirts, shorts and hats (and similar apparel) is likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association of Defendant's goods and services.

30.     Defendant's unauthorized use of OBC's ROGUE Marks constitutes trademark infringement, unfair competition and false designation of origin in violation of 15 U.S.C. § 1125.

31.     Defendant's unauthorized use of OBC's ROGUE Marks has caused OBC to lose control over the goodwill and reputation associated with OBC's ROGUE Marks.

32.     Defendant's unlawful conduct has unjustly enriched Defendant and caused actual damages and irreparable injury to OBC.

33.     Unless the Court enjoins Defendant from its unlawful conduct, OBC will continue to suffer irreparable injury, for which there is no adequate remedy at law.

## COUNT III

### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER NEW YORK LAW

34.     OBC re-alleges and incorporates the allegations in Paragraphs 1-33 above as though set forth herein.

35.     Defendant's unauthorized use of OBC's ROGUE Marks in connection with the manufacturing, advertising, promotion, distribution and sale of non-leather apparel such as t-shirts, hoodies, sweatshirts, shorts and hats (and similar apparel) is likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association of Defendant's goods and services.

36.     Defendant's unauthorized use of OBC's ROGUE Marks constitutes trademark infringement, unfair competition and false designation of origin in violation of New York law.

37.     Defendant's unauthorized use of OBC's ROGUE Marks has caused OBC to lose control over the goodwill and reputation associated with those marks.

38.     Defendant's unlawful conduct has unjustly enriched Defendant and caused actual damages and irreparable injury to OBC.

39.     Unless the Court enjoins Defendant from its wrongful conduct, OBC will continue to suffer irreparable injury, for which there is no adequate remedy at law.

**COUNT IV**

**TRADEMARK CANCELLATION**

40.     OBC re-alleges and incorporates the allegations in Paragraphs 1-39 above as though set forth herein.

## I.     Fraud on the United States Patent and Trademark Office

41.     Defendant's Registration Nos. 2,790,074 (ROGUE LEATHER BY REILLY OLMES); 2,815,985 (REILLY OLMES ROGUE LEATHER); 3,346,559 (ROGUE); 3,945,523 (ROGUE STATE); 4,529,759 (ROGUE RAW); 4,543,739 (ROGUE OUTLAW) and Application No. 77/706,222 (ROGUE) should be cancelled (or denied registration) because Defendant's predecessor-in-interest (Excelled) made deliberately false statements and omissions to the USPTO in order to procure and maintain those registrations and in order to file that application.

42.     Defendant's predecessor-in-interest (Excelled) concealed an agreement dated 2007 between Excelled and OBC (the "2007 Agreement") from the USPTO. The 2007 Agreement required Defendant's predecessor-in-interest (Excelled) to amend its ROGUE and ROGUE-formative applications and registrations by deleting all goods except jackets, coats, and skirts and to refrain from applying to register a ROGUE or ROGUE-formative mark for goods other than jackets, coats, and skirts.

43.     Defendant's predecessor-in-interest (Excelled) refused to amend its ROGUE and ROGUE-formative applications or registrations. Instead, it concealed the 2007 Agreement from

the USPTO and applied for, secured and maintained registrations for ROGUE and ROGUE-formative marks for items of apparel other than jackets, coats and skirts.

44.     Defendant's predecessor-in-interest (Excelled) had a duty to disclose the 2007 Agreement to the USPTO when prosecuting and maintaining Excelled's applications and registrations for ROGUE and ROGUE-formative marks beginning in April 2007. But Defendant's predecessor-in-interest (Excelled) never disclosed the 2007 Agreement to the USPTO because if it had done so, the USPTO would have rejected Excelled's applications and registrations for ROGUE and ROGUE-formative marks that contained items of apparel other than jackets, coats, and skirts. Excelled concealed the 2007 Agreement from the USPTO to cause the USPTO to register and maintain Defendant's marks.

45.     Defendant's Registration Nos. 2,790,074 (ROGUE LEATHER REILLY OLMES); 2,815,985 (REILLY OLMES ROGUE LEATHER); and 3,346,559 (ROGUE) should also be cancelled for fraud based on Defendant's predecessor-in-interest's (Excelled's) intentionally false statements made under oath in procuring and maintaining those registrations.

46.     For example, in connection with Application No. 76,620,735 to register the mark ROGUE, Defendant's predecessor-in-interest's (Excelled's) Mr. William Goldman, executed a Declaration on November 9, 2004 which was submitted to the USPTO swearing under penalty of perjury that Excelled was using the mark on "men's, ladies' and children's clothing, namely jackets, vests, shirts and pants." At the time Mr. Goldman executed his Declaration, he knew that Excelled was not using the mark on vests, shirts or pants. Mr. Goldman made these false statements to cause the USPTO to issue a registration for ROGUE. The USPTO would not have issued Registration No. 3,346,559 for ROGUE if it knew that the mark was not in use on the goods at the time Mr. Goldman executed his Declaration.

47.     In connection with Application Nos. 76,030,034 and 76,030,032 for the marks ROGUE LEATHER BY REILLY OLMES and REILLY OLMES ROGUE LEATHER, Defendant's predecessor-in-interest's (Excelled's) Mr. William Goldman, executed Declarations on April 11, 2000, which were submitted to the USPTO swearing under penalty of perjury that the applied-for marks were in use on "men's, women's and children's clothing made in whole or in substantial part of leather, namely, coats, vests, shirts and pants." At the time Mr. Goldman executed these Declarations, he knew that Excelled was not using the marks on "children's clothing made in whole or in substantial part of leather." Mr. Goldman made these false statements to cause the USPTO to issue registrations for the applied-for marks. If the USPTO knew that Excelled was not using the marks on the goods at the time Mr. Goldman executed the Declarations, it would not have issued Registration Nos. 2,790,074 and 2,815,985 for ROGUE LEATHER BY REILLY OLMES and REILLY OLMES ROGUE LEATHER.

48.     On December 8, 2009 and February 23, 2010, Defendant's predecessor-in-interest (Excelled) applied to renew its registrations for ROGUE LEATHER BY REILLY OLMES and REILLY OLMES ROGUE LEATHER, respectively. Excelled's Mr. William Goldman submitted Declarations to the USPTO in support of both applications swearing under penalty of perjury that the marks were in use on all of the goods in the registrations, and with respect to the ROGUE LEATHER BY REILLY OLMES registration, had been in continuous use for the past five years. At the time Mr. Goldman executed these Declarations, he knew that Excelled was not and had not for more than three consecutive years, used the applied-for marks on men's, women's and children's vests, shirts and pants made in whole or in substantial part of leather, which were listed in the registrations. Mr. Goldman made these false statements to cause the USPTO to maintain Registration Nos. 2,790,074 and 2,815,985 for ROGUE LEATHER BY

REILLY OLMES and ROGUE LEATHER BY REILLY OLMES. If the USPTO knew that Excelled was not using the mark on these goods at the time Mr. Goldman executed his Declarations, it would not have allowed Excelled to maintain the registrations.

## II.   Abandonment

49.    Defendant's Registration Nos. 3,346,559 (ROGUE), 2,815,985 (ROGUE LEATHER BY REILLY OLMES) and 2,790,074 (REILLY OLMES ROGUE LEATHER) should be cancelled in whole or in part based on abandonment.

50.    Defendant's predecessor-in-interest (Excelled) stopped using the marks in Registration Nos. 3,346,559, 2,815,985 and 2,790,074 for one or more of the goods in the registrations for more than three consecutive years with the intent not to resume use.

## III.   Prior Use and a Likelihood Of Confusion

51.    Defendant's Registration Nos. 3,114,812 (ROGUES GALLERY); 3,346,559 (ROGUE); 3,945,523 (ROGUE STATE); 4,529,759 (ROGUE RAW); 4,543,739 (ROGUE OUTLAW); 5,612,768 (ROGUE COLLECTIVE) and Application No. 77/706,222 (ROGUE) should be cancelled to the extent that they cover goods other than jackets, coats and skirts.

52.    Defendant's use of the marks in these registrations and application for the clothing items listed in the registrations (other than jackets, coats and skirts) is likely to cause confusion with OBC's ROGUE Marks.

53.     Defendant's registrations and application identified in Paragraphs 41-51, above, have damaged and are continuing to damage OBC.

## PRAYER FOR RELIEF

WHEREFORE, OBC prays for judgment against Defendant as follows:

1.      That this Court enter judgment in favor of OBC and against Defendant on all claims for relief alleged herein.

2.      That this Court issue a permanent injunction:

a.      enjoining Defendant, its employees, owners, partners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors and assigns, and all those in active concert or participation with them or having knowledge of the causes of action, from using the mark ROGUE, alone or in combination with other letter(s), word(s), term(s), designation(s), mark(s), and/or design(s) or similar mark(s), in connection with the manufacturing, advertising, promotion, distribution or sale of apparel including t-shirts, hoodies, sweatshirts, shorts and hats and similar apparel, which is not made in whole or in substantial part of leather, *see* 15 U.S.C. § 1116;

b.      ordering Defendant to deliver up for destruction all inventory, literature, signs, labels, prints, packages, wrappers, containers, advertising materials, stationary and other items in its possession, custody or control that use ROGUE; and

c.      ordering Defendant to surrender its trademark registrations and application for ROGUE, ROGUE-formative and ROGUES-formative marks for clothing to the extent requested in this Complaint.

3.      That this Court grant monetary relief to OBC in the form of:

a.      treble an accounting of all profits derived by Defendant from the acts complained of herein and treble damages under 15 U.S.C. § 1117 and any other applicable statute or at common law, according to proof at trial;

    b.      costs and reasonable attorneys' fees under 15 U.S.C. § 1117, and New

York law; and

    c.      punitive or exemplary damages, as permitted by New York law.

    4.      That this Court grant OBC such other and further relief, in law or in equity, as it

should deem just and proper.

## JURY DEMAND

OBC respectfully demands a trial by jury on all issues so triable.


Dated:  November 28, 2018

                    By:  /s/ Monica S. Asher

                    Monica S. Asher
                    McDermott Will & Emery LLP
                    340 Madison Avenue
                    New York, NY 10175
                    Telephone: (212) 547-5706
                    Facsimile: (212) 547-5444
                    Email: masher@mwe.com


                    John J. Dabney (to file for admission *pro hac vice*)
                    Mary D. Hallerman (to file for admission *pro hac vice*)
                    Katie Bukrinsky (to file for admission *pro hac vice*)
                    McDermott Will & Emery LLP
                    500 N Capitol St, N.W.
                    Washington, D.C. 20001
                    Telephone: (202) 756-8000
                    Facsimile: (202) 756-8087
                    Email: jdabney@mwe.com,
                    mhallerman@mwe.com, kbukrinsky@mwe.com

                    *Attorneys for Oregon Brewing Company*